JEFFREY D. CONWAY, ESQ.
Nevada Bar No. 4573
ROSENFELD ROBERSON & RINATO
6725 Via Austi Parkway, Suite 200
Las Vegas, NV 89119
Telephone: (702) 386-8637
Facsimile: (702) 385-3025

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RENATO R. RITTER; PATRICIA M. RITTER,<br><br>                Plaintiffs,<br><br>vs.<br><br>COUNTRYWIDE HOME LOANS, INC.; RECONTRUST COMPANY, N.A.; NATIONAL DEFAULT SERVICING CORPORATION; LITTON LOAN SERVICING; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK; DOES I-X; ROES I-X; Inclusive,<br><br>                Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF** |

Plaintiffs sue Defendants for Declaratory Relief and Injunctive Relief:

**A. Parties and Jurisdiction**

    A.  This is an action for declaratory relief and injunctive relief including enjoining a threatened foreclosure.

    B.  Plaintiffs Renato R. Ritter and Patricia M. Ritter are citizens and residents of Las Vegas, Nevada.  The property that is the subject of this action is located at 8190 Cassian Court, Las Vegas, NV 89015, hereinafter referred to as "the property" and is

further described as Assessor's Parcel Number 138-04-112-016 and Loan Numbers 00196899793 and 123147575.

C.   Defendant NATIOANAL DEFAULT SERVICING CORPORATION, hereinafter referred to as "NDSC" is not known as to what type of entity or jurisdiction of organization of the entity.

D.   Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. hereinafter referred to as "MERS" is and was at all times material hereto a Delaware corporation which lists its address on the Deed of Trust identified herein *infra* as P.O. Box 2026, Flint, Michigan 48501-2026 but whose corporate office is located at 1818 Library Street, Suite 300, Reston, Virginia 20190, with its Registered Agent being located at 9728 Wood Pine Court, Lake Worth, Florida 33467.  Defendant MERS functions as an electronic tracking system for mortgage loans including those which have been securitized.  Despite the representation in the Deed of Trust, MERS has never and is not legally a "Beneficiary" of the Deed of Trust; has no legal authority to transfer and either the Deed of Trust or the Note incident to the mortgage loan identified herein *infra*; and has no legal authority to institute or maintain foreclosure proceedings.

E.   Defendant COUNTRYWIDE HOME LOANS, INC., hereinafter referred to as "CHL" is believed to be and to have been at all time material hereto a California corporation.

F.   Defendant RECONTRUST COMPANY, N.A., hereinafter referred to as "RC" is not known as to what type of entity or jurisdiction of organization of the entity.

G.   Defendant LITTON LOAN SERVICING, hereinafter referred to as "LLS" is not known as to what type of entity or jurisdiction of organization of the entity.

H.   Defendant BANK OF AMERICA., hereinafter referred to as "BOA" is not known as to what type of entity or jurisdiction of organization of the entity.

I. Defendant THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, hereinafter referred to as "BNYM" is not known as to what type of entity or jurisdiction of organization of the entity.

G. The true names and capacities of the Defendants named herein as DOES 1-1000 inclusive, whether individual, corporate, associate or otherwise, are presently unknown to the Plaintiffs who therefore sue the Defendant DOES by such fictitious names. When the true names and capacities of such DOES 1-1000 inclusive are discovered, the Plaintiff will ask leave to amend this Complaint to substitute the true names of said Defendants. The Plaintiffs are informed and believe and therefore allege that the Defendant DOES so designated herein are responsible in some manner for the events and occurrences contained in this action.

B. **Background**

1. Defendant NDSC, instituted a non-judicial foreclosure proceeding to foreclose on a deed of trust as to the Property. The trustee sale date is presently set for May 4, 2010, at 10:00 a.m. P.S.T.

2. Upon information and belief, Plaintiffs allege that none of the Defendants NDSC, MERS, CHL, RC, LLS, BOA, nor BNYM were the lender, but were only middlemen performing a service for a fee on behalf of a New York based entity which sold securities to raise the capital for Plaintiffs' loans. Plaintiffs do not deny that a debt obligation was created. However, Plaintiffs do deny that any obligation is owed to any of the Defendants in this action. Plaintiffs do not know to whom the obligations are owed, if anyone, and Plaintiffs do not know the amount of the obligations, if any. Toxic Asset Relief Program (TARP) funds may well have been applied to Plaintiffs' mortgages, or other funds such as A.I.G. insurance proceeds or other credit default swaps. Upon information and belief, Plaintiffs allege that none of the Defendants were in fact the Lender, and that none of the Defendants had or have any risk of loss in these loans.

3. Upon belief and information, the loans were in fact made by some New York City Wall Street securitization entity that was not licensed to make loans in Nevada.

Plaintiffs have requested information regarding the true holder in due course of the loan purportedly from Defendants in correspondence. Proof of the current holders in due course of the loans, if one exists, has never been produced to the Plaintiffs, and Defendants have failed to prove or even take the position that any of them are the holder of all rights under the loans.

4. Defendant, NDSC, which claims to be the "trustee" for the "certificate holders" of mortgages which have been securitized, cannot establish that they hold the true ownership interest in the mortgage which is the subject of this action. They cannot establish that the true "certificate holders" have lawfully succeeded to such rights, or that they have legally assigned such rights to Defendants. The "rights" referred to include, specifically, the right to pursue a foreclosure of Plaintiffs' rights.

5. There were never any "obligations in favor of" Defendant MERS, as Defendant MERS was not the original lender; was never owed any monies; was never paid any monies; and is legally precluded from undertaking any actions with reference to the mortgage loan or the property mortgaged thereby pursuant to MERS' own contract, terms, and conditions of its limited function as previously enunciated and set forth in numerous Court decisions.

6. Defendants cannot establish they have suffered any actual or threatened injury as a consequence of a default, if any, by Plaintiffs. Such injury is legally required under applicable Nevada law in order for Defendants to satisfy the legal prerequisite that they have legal standing to foreclose on the subject property.

7. By commencing a non-judicial foreclosure, Defendants have created a cloud of title on Plaintiffs' property. This is the same property which is the subject of the mortgage originally funded by what is believed to be, upon information and belief, a New York securitization scheme.

8. Defendants have notified Plaintiffs that the foreclosure sale on the Property has been scheduled to take place on May 4, 2010.

9. This Complaint is thus being timely filed in accordance with applicable law to challenge the foreclosure prior to the issuance of any certificate of title, with respect to the subject property, following sale. Upon information and belief, Plaintiffs allege that a severance of the ownership and possession of the original Note and Deed of Trust has occurred. The true owners and holders of both the original Note and Deed of Trust are unknown as a result of one or more alleged assignments and the parsed

sale of certain rights under the loans. Therefore, Defendants are legally precluded from foreclosing on the Property unless they can prove full legal standing to do so.

C. **Material Facts and Allegations**

10. Plaintiffs hereby incorporate all allegations of all the above paragraphs as if they were fully stated.

11. Plaintiffs are the nominal payors on the subject notes. Upon information and belief, the Defendant "loan sellers" are financial institutions that were paid a fee to pose as residential mortgage lenders, when in fact the source of loan funds and the actual lender (investors in certificates) and underwriter (mortgage aggregator and investment banker) were other parties whose identities and receipt of fees and profits were withheld from Plaintiffs at Closing and continue to be withheld from Plaintiffs by the Defendants.  Any reference to Lender or Lenders or Loan Seller in this Complaint refers to all Defendants and their agents and accomplices.

12.  Upon information and belief, plaintiff was, unknowingly, victimized by a fraudulent scheme.  Typically, in such transactions as this one, a loan seller acts as principal with a so-called "independent appraiser" of the property.  The mortgage broker and mortgage originator, typically, induce a homeowner into a transaction that does not and could not meet legal underwriting standards for a residential mortgage.  The loan seller poses as a conventional mortgage lender, thus leading the homeowner to reasonably believe that the loan seller, the mortgage broker and the loan originator all have an interest in the successful repayment of the loan.

13. In such transactions, including, upon information and belief, this case, the loan seller, the mortgage broker, the appraiser, the loan originator, the title agent, escrow agent and trustee on the deed of trust have no financial stake or liability in the transaction. They have no interest other than obtaining Plaintiffs' signature on a loan that can, effectively, never be repaid because the mathematics render the scheme impossible, in this case, among other things, an artificially inflated, collusively obtained, appraisal of the property to obtain loan approval.  The appraisal was intentionally and knowingly inflated, together with the other loan data, in order to achieve the closing of the alleged "loan transactions."

14. In executing and accepting the closing documents, the Plaintiffs relied upon the 'due diligence' of the apparent lender. Upon information and belief, no lender was really involved in the closing transaction in the sense of an entity or person performing due diligence and evaluation pursuant to national standards for underwriting and evaluating the risk of loaning money for a residential loan closing.

15. Therefore, no bank or other financial institution (actually performing under the standards, rules, and regulations governing such institutions) was the supposed "lender." The inflated appraisal added an undisclosed cost to the loan which, when considered with other terms of the loan, both disclosed and undisclosed, and amortized over the real expected life of the 'loan," exceeded the limits of legal propriety.

16. Defendant LLS was purportedly named as the lender in the transaction Plaintiffs executed. However, upon information and belief, the true lender was the New York (or other location) investor, and investors, who purchased the securitized instruments promoted by Wall Street investment bankers.

17. Upon information and belief, none of the Defendants have the notes which Plaintiffs executed, and none of the Defendants are holders in due course of the notes. Consequently, all notices of default, acceleration and sale issued by the Defendants, and each of them, are legally invalid because they were not issued by a real party in interest. Therefore, due process of law has not been afforded to Plaintiffs. This is so because NRS 107.080 (4) requires that a Trustee's sale must be conducted by a "person authorized to make the sale under the terms of the deed of trust."

18. Upon information and belief, none of the defendants meet the definition of a "lender" as defined in NRS 596D.050.

19. Upon information and belief, none of the Defendants are beneficiaries of the lien which was created by Plaintiffs' execution of the loans and trust deeds.

20. Upon information and belief, without the knowledge of the Plaintiffs, one or more of the Defendants, or Defendant's assignors, entered into assignment and assumption agreements with individuals or entities unknown to Plaintiffs.

21. Additionally, upon information and belief, and without knowledge of the Plaintiffs, one or more of the Defendants, or Defendants' assignors or entities, entered into a pooling and service agreement with individuals or entities unknown to Plaintiffs.

22. Upon information and belief, under the terms and procedures of these agreements:

A. Contrary to the documents presented to Plaintiffs before and during the "closing of the loan transaction," the purported lender was neither the source of funding nor the actual lender, because the loan had been pre-sold.

B. At the time of recording with the County Recorder of Clark County of the standard documents, the source of funding and the "lender" was a different entity than the nominal mortgagee and the nominal beneficiary. The true identity of these parties was neither named nor disclosed, a violation of NRS 205.395.

C. The security for Plaintiffs' "loan" thus secured an obligation that had in fact already been paid in full by an undisclosed third party or parties. The said third party was acting as a financial institution or "lender" without ever having been chartered or registered to conduct business in this manner, despite, and contrary to, rules and regulations set forth in NRS 645B.900. Plaintiffs have been damaged by such violation of law.

23. Plaintiffs have no idea whom, if anyone, is the true holder in due course (if there is one) of the note related to the property of Plaintiffs.

24. It is doubtful that any of the Defendants have any knowledge or have made any effort to determine whether the purported holder in due course have been paid in whole or in part.

25. In order for these Defendants to maintain legal standing in connection with the subject loan transaction they are required to show the entire chain of title of the notes and the entire chain of title of the deeds of trust. The Plaintiffs allege Defendants are unable to show such entire chains of title. Plaintiffs allege Defendants cannot produce such evidence of a complete chain of title or are intentionally withholding the information that would show breaks in such chain. Nevada law clearly defines a "lender" as one who currently holds a mortgage or an obligation. If the Defendants have sold the obligation, as Plaintiffs allege, then they are not a "lender." They are not a real party in interest and they have no standing to pursue a foreclosure action.

26. Under the "doctrine of a single transaction," there are only two parties in interest in any loan. Those two parties are the "investor" and the borrower. All the other parties are simply middlemen who perform a service for a fee, but are not interested parties, and, therefore, have no standing in court to bring an action as required by NRCP 17.

27. At no time whatsoever did Defendants ever advise Plaintiffs that:

A. The mortgage loans being processed were not in Plaintiffs' best interest;

B. That the mortgage loans were a temporary transaction (a transaction where terms, risks, or provisions at the commencement of the transaction differ at a later time) on which Plaintiffs were unwittingly participating in Defendants' illicit activities.

C. That Plaintiffs would likely be placed in a position of default, foreclosure, and deficiency judgment regardless of whether or not they met their loan obligations once the true lender or true holder(s) in due course appeared, and that the true fair market value of the property was substantially inflated;

D. Upon information and belief, as a result of the closing and in connection therewith, Defendants placed the Plaintiffs into a pool of sub-prime adjustable rate mortgage programs, with Defendants intentionally misleading Plaintiffs and the other borrowers and engaging in material omissions by failing to disclose to the high degree of risk involved in this loan, due to a very unfair and abusive adjustable note mortgage formula. Upon information and belief, Plaintiffs were being placed into a pool where the usual loan was an adjustable rate mortgage program despite the fact that they were not fully qualified for such a program.

28. Defendants and both their assignors and successors intentionally failed to provide Plaintiffs with various disclosures which would indicate to the Plaintiffs that the contract entered into was void, illegal, and predatory in nature.

29. Plaintiffs reasonably relied upon the good faith by the agents who transacted Plaintiffs' loan. This reliance was betrayed in that such disclosures were not made. Had they been made, Plaintiffs would not have entered into this transaction.

30. Defendants were under numerous legal obligations as fiduciaries and had the responsibility to oversee the loan transactions to insure that they were legal, proper, and that Plaintiffs had received all legally required disclosures. This trust was violated by the Defendants and their assignors and assignees.

31. Upon information and belief, Defendants and their assignors engaged in a pattern and practice of defrauding Plaintiffs in that, during the entire life of the mortgage loan, Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and have failed to accurately debit fees.

32. Upon information and belief, at all times material Defendants had actual knowledge that the Plaintiffs' accounts were not accurate and that Plaintiffs were required to make further payments based on Defendants' inaccurate accounts.

33. Upon information and belief, unknown to Plaintiffs, their payments were based on the improper, inaccurate, and fraudulent representations as to Plaintiffs' accounts.

34. Upon information and belief, as a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs overpaid in interest.

35. Upon information and belief, Defendants also utilized amounts (known to the Defendants to be inaccurate) in order to determine the amount allegedly due and owing for purposes of foreclosure.

36. NRS 205.372 (1) (a) protects the consumer from mortgage fraud where the lender commits fraud by misrepresentation or concealment of a material fact. Upon information and belief, Defendants violated this statute.

37. NRS 205.372 states that it is a violation of Nevada law to deliberately conceal or fail to disclose material facts. Receiving proceeds from such transactions and conspiring with others in such transactions is also prohibited. Upon information and belief, Defendants have violated such statutes.

38. Defendants violated Plaintiffs' rights by making unfair loans that Plaintiffs were not qualified for, and which Plaintiffs were, not able to repay regardless of Defendants' assurances that refinancing would be available even when Defendants had no stake in the loan of Plaintiffs. Defendants and their assignors were only interested in making fees by closing the loan.

39. NRS 598D.110 states that a lender who willfully engages in an unfair lending practice described in said chapter is liable to the borrower in an amount equal to the sum of: 2 (a), three times the amount of any actual damage sustained by the borrower, and 2(b), the costs of the borrower bringing the action and reasonable attorney fees. Here, by Defendants knowing, willful participation in the securitization scheme including fraudulent appraisal inflation violated such statute. Plaintiffs seek recovery of these damages from the Defendants.

### First Cause of Action
### 1. Misrepresentation and Fraud by Omission

40. Plaintiffs hereby incorporate the allegations of the above paragraphs as well as all other paragraphs herein as though the same were fully stated.

41. The corporate Defendants, their executives, employees, and agents committed fraud in direct violation of NRS 205.372 by failing to disclose to the Plaintiffs the predatory, unethical and unsound and unfair lending and foreclosure practices, and

bonuses and inflated salaries paid pursuant thereto.  Defendants were possessed of such duty to make such disclosure.  The facts which Defendants failed to disclose were material to the mortgage documents, and to the Plaintiffs' informed right to rescind.  Defendants knew, and should have known, if these facts had been disclosed then Plaintiffs would not have executed the subject mortgage documents and would have ceased to rely upon Defendants' integrity and good faith.  Plaintiffs had they been fully informed would have rescinded.

42.  Plaintiffs innocently and justifiably relied upon the false representations of the Defendants.   Plaintiffs were entitled to rely upon said misrepresentations.  Defendants knew that their behavior was not in the best interest of the Plaintiffs and Defendants knowingly took Plaintiffs down a path of economic turmoil, suffering, and loss.

43.  Defendants failed to disclose their predatory, unsound, unfair lending practices, and Plaintiffs by innocent reliance thereon   have been damaged by such and continue to suffer damage today.  Plaintiffs seek damages in excess of $10,000 from Defendants.

**Second Cause of Action**

**2. Quiet Title**

44.  Plaintiffs hereby incorporate all the allegations of the above paragraphs and all other paragraphs, as though the same were fully stated herein.

45.  The title to Plaintiffs' property is clouded.  That is, Defendant NDSC issued a notice of trustee's sale, which indicates at least one of the Defendants believe they possesse a security interest.

46.  Plaintiffs are unaware who the actual holders in due course are, if any, and the known Defendants are unable to produce documentation showing they have an interest in the property with proper evidence of chain of title from start to present.

47.  Plaintiffs have clean hands and have behaved in an equitable manner.  Defendants have dirty hands and have not behaved in an equitable manner.  Defendants have effected severe harm on Plaintiffs.  Clearing title would not result in any unjust enrichment of Plaintiffs, as Plaintiffs have suffered damage in an amount in excess of $10,000.  The true amount is subject to being trebled pursuant to Nevada's anti-racketeering statutes.  The amount owed by Defendants therefore exceeds any amount ostensibly owed per the note and deed of trust executed by Plaintiffs.

48. As a direct and proximate result, Plaintiffs have been injured and damaged as described herein. Plaintiffs are entitled to clear title. Any interest possessed or claimed by Defendants, or any entity acting in concert with the Defendants, should be extinguished.

49. Plaintiffs demand by this Complaint that the Deed of Trust must be rescinded and the subject loan transactions be canceled since the note has been severed from the deed of trust.

50. Plaintiffs are entitled to quiet title against subject Defendants, and clearing title of the purported subject deed of trust encumbrance.

51. Plaintiffs therefore seek a declaration from this Court that the title to the subject property is vested in Plaintiffs alone, and that the Defendants herein, and each of them, be declared to have no estate, right, title, or interest in the subject property and that said Defendants and each of them, be forever enjoined from asserting any estate, right, title, or interest in the subject property adverse to the Plaintiffs herein.

### Third Cause of Action

### 3. Tortious Breach of the Implied Duty of Good Faith and Fair Dealing

52. Plaintiffs hereby incorporate all the allegations of the above paragraphs and all other paragraphs, as though the same were fully stated herein.

53. Defendants breached the implied duty of good faith and fair dealing attendant to the subject contract in a tortious manner. Defendants, by virtue of the trust reposed by Plaintiffs, and the fraud committed are liable in tort.

54. As a direct and proximate result Plaintiffs have suffered damage and seek recovery in excess of $10,000 therefore.

### Fourth Cause of Action

### 4. Civil Conspiracy

55. Plaintiffs hereby incorporate all the allegations of the above paragraphs and all other paragraphs, as though the same were fully stated herein.

56. Upon information and belief, Defendants entered into a conspiracy, to commit fraud and for the common purpose of accruing economic gains for themselves at the expense of the Plaintiffs (and other Nevada mortgagors.) The fraudulent actions of the Defendants were committed intentionally, willfully, and wantonly, and with reckless disregard for the rights of the Plaintiffs. This conspiracy has been ratified, and participated in by Defendants by failing to inform Plaintiffs of their rights and

continuing to collect monies and communicate with the Plaintiffs and other mortgagors based on the false premise that fraud by omission has not occurred.

57. As a direct and proximate result of the conspiracy of Defendants the Plaintiffs have been harmed and damaged as described herein. Plaintiffs thus demand from the Defendants restitution in the form of actual damages, exemplary damages, and legal costs, and attorney fees in excess of $10,000.

**Fifth Cause of Action**

**5. Unjust Enrichment**

58. Plaintiffs hereby incorporate all the allegations of the above paragraphs and all other paragraphs, as though the same were fully stated herein.

59. As a direct and proximate result of Defendants' activities, the Plaintiffs have been injured and damaged as described herein. Defendants have been unjustly enriched by their illegal and fraudulent actions. Plaintiffs seek recovery from Defendants in the form of damages in excess of $10,000.

**Sixth Cause of Action**

**7. Declaratory Relief**

60. Plaintiffs hereby incorporate all the allegations of the above paragraphs and all other paragraphs, as though the same were fully stated herein.

61. Nevada Rule of Civil Procedure 17 requires all legal actions can only be filed by the real party in interest.

62. Upon information and belief, Plaintiffs allege that none of the Defendants are a lender according to the definition of NRS 589D.050 which states that a Lender is a holder of a note or obligation. Again, in NRS 40.506 a secured lender is defined as a holder of a note. Upon information and belief, Plaintiffs allege that none of the Defendants is currently a holder in due course of any note related to the subject property. Plaintiffs allege upon information and belief that Defendants either sold the Notes through a securitization scheme or were only middlemen using funds other than their own, and as such that all Defendants are not real parties in interest. Therefore, they have no standing to bring any action in this or any court against Plaintiffs related to the subject property. Additionally, all notices received by Plaintiffs from the Defendants are invalid and null and void and of no effect, since the Defendants are not parties in interest and have no standing to issue such notices. Nor do Defendants have the right or authority to modify any loans or the terms of any loans, or conduct

any foreclosure, or conduct any short sale of said property since Defendants are not currently parties in interest with standing to do anything related to the Plaintiffs and the subject property.

63. NRS 30.040 gives the Plaintiffs the right to have their rights clarified by a court of law regarding the validity of the contracts allegedly executed with the Defendants.

64. Plaintiffs are the property owners of Nevada according to the statute NRS 30.020.

65. The deeds of trust and the notes are a contract or an instrument according to the meaning of the statute NRS 30.040.

66. NRS 30.030 places this type of issue within the scope of this Court and the declaration of the Court shall have the force of a final judgment.

67. NRS 30.140 requires that declarations of the Court are to be remedial in nature and to settle and afford relief from uncertainty or insecurity in situations with respect to rights, status and other legal relations, and are to be liberally construed and administered.

68. THEREFORE, Plaintiffs respectfully request the Court to declare and issue an Order that Plaintiffs are the rightful owners of record of the subject property which has been their home and principal residence for several years.

69. FURTHERMORE, Plaintiffs respectfully request the Court to declare and issue an Order that none of the Defendants has any right, title, estate, interest, or other dealing with the subject property of the Plaintiffs.  The Court should strike from the record of the Clark County Recorder any reference to any interest of the Defendants under the deed of trust or note related to the subject property.

70. Plaintiffs additionally respectfully request the Court to issue an Order requiring Defendants to remove any negative credit reports against Plaintiffs related to the subject property.

**RELIEF SOUGHT**

**WHEREFORE:** Plaintiffs pray and demand Judgment herein as follows:

1. For damages in excess of $10,000.

2. Additionally, punitive damages as may be lawful and appropriate.

3. For quieting of title in Plaintiffs as to the real property which is the subject matter of this action at law.

4. For attorneys' fees and costs.

5. For injunctive relief preventing Defendants from pursuing any foreclosure action or collection on the note signed by Plaintiffs relating to the subject property.

6. For declaratory relief pursuant to the Sixth Cause of Action.

7. For other injunctive and equitable relief as the Court deems appropriate.

8. And for such other and further relief as is proper herein and as more fully specified in each paragraph foregoing.

ROSENFELD ROBERSON & RINATO

 /s/ Jeffrey D. Conway
JEFFREY D. CONWAY, ESQ
Attorney for Plaintiffs

**DEMAND FOR A JURY TRIAL**

Plaintiffs demand a trial by jury of all matters so triable as a matter of right.