JEFFREY D. CONWAY, ESQ.
Nevada Bar No. 4573
CONWAY LAW FIRM
2153 Ponticello Drive
Henderson, Nevada  89052
Telephone: (702)  629-7962
Facsimile: (702)  629-7958

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| RENATO R. RITTER; PATRICIA M. RITTER, <br><br>     Plaintiffs, <br><br> vs. <br><br> COUNTRYWIDE HOME LOANS, INC.; RECONTRUST COMPANY, N.A.; NATIONAL DEFAULT SERVICING CORPORATION; LITTON LOAN SERVICING; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; BANK OF AMERICA; THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK; DOES I-X; ROES I-X; Inclusive, <br><br>     Defendants. | Case No. 2:10-cv-00634-RLH-RJJ <br><br> **SECOND MOTION FOR EMERGENCY EXPARTE TEMPORARY AND PERMANENT RESTRAINING ORDER TO STOP A WRONGFUL FORECLOSURE AND EVICTION** |

**I.  BACKGROUND INFORMATION**

1.  Plaintiffs hereby file this motion pursuant to Fed.R.Civ.P.65.  This second motion is brought based on new case law in Plaintiffs' favor and additional facts.  Through legal counsel, Plaintiffs filed a Complaint in the United States District Court District of Nevada on May 3, 2010

-1-

requesting injunctive relief and declaratory relief for the purposes of adjudicating an imminent wrongful foreclosure action and certain eviction action brought against them by the Defendants so named on the cover sheet of this Motion.  Plaintiffs also recorded a Lis Pendens with the County recorder of Clark County.   Plaintiffs have acted with all diligence to protect their interests, Plaintiff has been in loan modification negotiations with the purported Note holder and trustee, but now a foreclosure sale is imminent, and, so, a temporary restraining order is required.

2. The property the subject of this foreclosure action is the home and principal residence of the Plaintiffs where Plaintiffs have resided for a number of years and intends to continue to reside indefinitely.  Defendants are now attempting to sell Plaintiffs' home on May 3, 2010.  Because of the timing of the Defendants proposed actions, Plaintiffs are in a state of dire immediate danger, and this is a "true emergency."  If Defendants are allowed to proceed, this will inflict irreparable injury on the Plaintiffs.  Plaintiffs are suffering from pancreatic cancer, requiring medical treatment out of the country, and foreclosure proceedings are delaying his required medical treatment for a very serious condition.

**II. PLAINTIFFS' ARGUMENT IN SUPPORT OF THE COURT GRANTING THIS MOTION**

3. Plaintiffs allege that Defendants have no legal or economic interest in their property; and therefore, Defendants did not have legal standing to bring a foreclosure or eviction action against Plaintiffs.  There is an ever-expanding body of case law establishing that a party cannot

foreclose without being able to establish, by copies of note transfers, that it is in fact the holder in due course of the underlying note. Defendants have not done that.

4. Plaintiffs do not deny that a mortgage obligation was created some years ago, however, Plaintiffs do deny that the obligation is owed to any of the Defendants. The identity of the true holder in due course of any alleged obligation on Plaintiffs' property has not been revealed to Plaintiffs, but upon information and belief, none of the Defendants are the current true holder in due course of Plaintiffs' mortgage obligation since the underlying note was securitized and sold to unidentified third parties long ago.

5. Plaintiffs have a very high likelihood of success at a trial on the merits, therefore the Court should not allow Defendants to wrongfully evict Plaintiffs from their home. Any wrongful eviction will be extremely burdensome to the Plaintiffs and will only serve to increase Plaintiffs' damage award against the Defendants when this case is adjudicated on the merits and the Plaintiffs prevail.

6. The Defendants have nothing to lose in this case since the Defendants did not loan any money of their own, and/or, have already been fully repaid out of the sale proceeds of selling the obligation to other third parties through a securitization scheme devised by investment bankers. Defendants will not be prejudiced against by the granting of this requested temporary restraining order.

7. By contrast, Plaintiffs have much to lose economically and emotionally by having her house sold and losing the equity of her down payment, as well as amortized equity from regular monthly payments and improvements to the property. Additionally, Plaintiffs must bear the physical and emotional distress of moving, finding new lodging, and all the monetary expenses that are attendant. Plaintiffs do not have the means to carry on if they are to bear the cost and damage of the Defendants wrongful actions against her. Any wrongful foreclosure and eviction will inflict irreparable injury upon the Plaintiffs. Any lack of granting the Order requested will be highly prejudicial against the Plaintiffs.

8. There is no "default" in this case. A default is defined as a payment missed when a payment is owed. There is no payment owed to the Defendants in this case, hence there is no default. Due process has not been served according to Nevada law which clearly states that any Notice of Default must be received from the true party in interest related to any obligation where a payment is missed and owed. This is a simple case of Defendants that cannot show that any of them are the current holder of the note or the nominee of the current holder of the note, secured by Plaintiffs' property (the "Note") which is the subject of the wrongful foreclosure in this case (the "Property"), which is a prerequisite to foreclosure. *A very recent California case has again upheld the principles set forth in the cases cited below. See In re Walker*, Case No. 2:10-21656-E-11 (U.S. Bk. Ct., E.D. Cal., May 20, 2010.) This ruling agreed with numerous other well-known cases that have held the same. Even more significantly, the Supreme Judicial Court of Maine has agreed, in a non-bankruptcy case. *See MERS v. Jon E. Saunders*, Judicial Ct. of Maine, Docket No. CUM-09-640 (August 12, 2010) ("there is no evidence that [MERS] held the note, was in possession of the note..."). That same analysis applies to all of the Defendants, not just MERS.

But, the involvement of MERS makes likely that a proper showing of a chain of title on the note cannot be made by any Defendant.  With all due respect, these precedents cannot be ignored.

This is a simple case of Defendants that cannot show that any of them are the current holder of the note or the nominee of the current holder of the note, secured by Plaintiff's property (the "Note") which is the subject of the wrongful foreclosure in this case (the "Property"), which is a prerequisite to foreclosure.  *See Mortgage Electronic Registration Systems, Inc. v. Lisa Marie Chong, Leonard E. Schwartzer, Bankruptcy Trustee, et al.,* Dist. Ct. Case No. 2:09-cv-00661-KJD-LRL (Dec. 4, 2009) ("MERS" had no standing as a creditor to pursue its claim against the property, due to inability to show a valid chain of title on transfers of the Note, which is why Defendants' electronic registration system was in most cases defective – MERS could not show that it was the "real party in interest" or acting on behalf of the real party in interest), *affirming In re Joshua and Stephanie Mitchell,* U.S. Bk. Ct., Dist. Nev. Case No. BK-S-07-16226-LBR (*Aug. 19, 2008); see also Landmark Bank v. Kesler,* 2009 Kan. Lexis 834*; MERS v. Southwest Homes of Arkansas,* 2009 Ark. Lexis 121.  In yet another very important decision of national significance, on May 20, 2010, the United States Bankruptcy Court for the Eastern District of California ruled that MERS cannot have standing to foreclose (without such proof), *See In re Walker, Supra*.

As in the above-cited cases, none of the Defendants can prove that they are the current holder in due course of the Note, any more than any other third party stranger to the transaction, and, therefore, there is a risk that a true holder in due course of the Note may surface in the future, demanding payment.  Plaintiff has made requests for evidence or documentation showing the entire chain of title of the loan, and agreements affecting title.  Plaintiff alleges that, like the vast majority of loans made in the U.S. during the same time period, Defendants purport to act as the Note holder, but is actually an agent of the true undisclosed holder of the Note.  To illustrate, in

Utah, recently, as widely reported, Bank of America was enjoined from any foreclosure proceedings. Since the Note and deed of trust were executed, the purported trustee and current Note holder have changed, but Defendants cannot show the chain of assignments.

Since the Note and deed of trust were executed, the trustee and Note holder have purportedly changed, but Defendants cannot show evidence of the chain of assignments. Judge Teilborg's recent decisions are not inconsistent with Plaintiff's position in this case. *See In re MERS Litigation, Order*, MDL Docket No. 09-2119-JAT, CV 10-630-PHX-JAT and *Ciardi v. The Lending Company, et al.*, (D. Ariz., 5/24/10), 2010 WL 2079735 (D. Ariz.). Those cases are based on theories not relevant here. The first theory is that the deed of trust was somehow extinguished. That is not argued here. We argue that Defendants must show that they are the current real party in interest with respect to the note. The second theory was that the original note must be produced. Plaintiff does not assert that. These cases are irrelevant to this case.

It is well-established that a case should not be dismissed prior to the Plaintiffs having sufficient time to conduct discovery. *See e.g. Vision Air*, 121 Nev. 113(2005) (dismissal denied – 8 months is not sufficient time to conduct discovery). That is particularly the case here, where the entire lending industry has gone through such an extraordinary period of non-transparency and untrustworthiness, and full discovery is, therefore, indispensable.

Under the case law set forth above, Defendants do not have any standing to collect on the Note or to foreclose on the Property, and, Plaintiffs must prevail. Defendants have committed numerous other wrongdoings, as discussed below, in predatory and fraudulent lending practices, including, without limitation, the acts set forth in Plaintiffs' Complaint. Plaintiffs will seek discovery as to whether Defendants have been compensated for the loan by the federal stimulus

program or Troubled Assets Relief Program ("TARP").  This is the basis of the Quiet Title claim discussed below.

9.  Any amount owing related to any obligation of the Plaintiffs must be verified since it is not clear what amount if any is owing after the possible payments credited and received from AIG insurance payments, "TARP" payments, credit default swap payments, cross-collateralization payments, and other bail-out funds, etc.

10.  Upon information and belief, Defendants do not have any clear recorded chain of title from inception to the current time, including endorsements on note transfers, showing that they have any right or standing to bring a foreclosure or eviction action against the Plaintiffs, or have refused to provide it after numerous written requests.

11.  Should the true holder in due course appear at any later date and demand satisfaction, Plaintiffs run the risk of potentially being placed in a position of double financial jeopardy if the Court should allow the current Defendants to wrongfully foreclose and wrongfully take Plaintiffs' property from him.  Plaintiffs request that Defendants' wrongful foreclosure sale be enjoined and all eviction proceedings be halted, pending resolution of this case.

12.   The Court should not allow Defendants' fraudulent schemes to continue by enabling Defendants to continue their illegal and fraudulent actions.  An Order staying Defendants' actions will allow time for the Court to determine if the Defendants have any legal grounds to proceed with foreclosure.  This will protect the rights of the Plaintiffs in the meantime and prevent them from suffering irreparable wrongful loss and injury.

13. Good public policy and benefit to society will be supported by the grant of this motion, and no harm to society will occur as a result of the grant of this motion.

14. This Order involves the title to Real Property and is appropriate for this Motion.

15. NRS 17 gives the Plaintiffs the right to know the true identity of the parties who are in interest in Plaintiffs' case.

16. Nevada law allows for Plaintiffs to have his rights clarified to know where Plaintiffs stand in relation to the claims made by the Defendants.

17. Plaintiffs have given notice of this Motion to Defendant National Default Servicing Corporation, purported trustee, and acted diligently in this matter.

18. Plaintiffs should not be required to post a bond in this matter because of the likelihood of the Plaintiffs' success on the merits of the case.  In fact, since the Defendants initiated this action by their action of non-judicial foreclosure, it is the Defendants who should in fact be posting a bond for the damages and expenses incurred by the Plaintiffs.

///

///

**WHEREFORE,** Plaintiffs respectfully request the Court to grant an Order staying any and all foreclosure actions and any and all unlawful detainer or eviction actions, both temporarily and permanently until such time as the merits of the case can be heard and adjudicated by this Court. Plaintiffs pray for this motion to be granted, for the many reasons stated above.

DATED on this 20th day of September, 2010.

Respectfully submitted

                                                          CONWAY LAW FIRM

                                                          */s/ Jeffrey D. Conway*
                                                          Jeffrey D. Conway, Esq.
                                                          Nevada Bar No. 4573
                                                          2153 Ponticello Drive
                                                          Henderson, NV 89052
                                                          Attorney for Plaintiffs